UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

**FILED**

00 DEC -8 PH 2: 09

U.S. DISTRICT COURT
N.D. OF ALABAMA

SHERRY RUDICK, ET AL.,       )
                             )
     Plaintiff,              )
                             )
vs.                          )        Civil Action No. 99-S-209-S
                             )
BENJAMIN MOORE & CO.;        )
TECHNICAL COATINGS CO.;      )        **ENTERED**
etc.,                        )
                             )        DEC - 8 2000
     Defendants.             )

## MEMORANDUM OPINION

This is an employment discrimination case.  Plaintiff claims
that she was subjected to disparate treatment because of her gender
in violation of Title VII of the Civil Rights Act of 1964, as
amended, 42 U.S.C. § 2000e *et seq*.  The action presently is before
the court on the following motions, among others that shall be
addressed by separate orders:  *e.g.*, (1) a motion by defendant
Benjamin Moore & Co. ("Benjamin Moore") for partial summary
judgment, seeking dismissal of plaintiff's disparate treatment
claim (doc. no. 94); (2) plaintiff's motion for class certification
(doc. no. 103); (3) Benjamin Moore's motion to dismiss plaintiff's
class action claims (doc. no. 105)[1]; (4) the motion of Benjamin
Moore and co-defendant Technical Coatings, Inc. ("Technical

---

[1] This motion is entitled "Defendant's <u>Motion to Decertify Plaintiff's
Proposed Class Action</u> and Motion to Dismiss Class Action Claims" (emphasis
supplied).  That is a misnomer.  No class has been certified by this court.

Coatings") to strike plaintiff's class claims against Technical
Coatings, and, her disparate impact claims against both defendants
(doc. no. 125); and (5) defendants' motion to amend the order
entered by this court on August 18, 2000 (doc. no. 121), and
dismiss plaintiff's retaliation, compensatory, and punitive damage
claims with prejudice (doc. no. 126).[2] Upon consideration of the
motions, pleadings, briefs, and the parties' evidentiary
submissions, the court finds that: the motion for partial summary
judgment is due to be denied; plaintiff's class and disparate
impact claims are due to be dismissed; and defendants' motion to
amend the order dismissing plaintiff's retaliation claim, and her
claims for compensatory and punitive damages, to reflect that such
claims are dismissed "with prejudice" is due to be denied.

## I. Facts

Benjamin Moore manufactures paint at a plant located in Pell
City, Alabama.  Plaintiff applied for employment at that facility
during the summer of 1996.  She was not familiar with the various
jobs available, but preferred a production position because her
previous work experience had been as a production laborer in a boat

---

[2] Plaintiff filed a motion for leave to amend her complaint on August 15,
2000, seeking permission of the court "to dismiss her claim of retaliation and
claims for relief in the form of compensatory and punitive damages."  Doc. No.
119 ¶ 1.  An order stating simply "Granted and So Ordered" was handwritten by
this court on the face of that motion on August 18, 2000, and entered that same
day (doc. no. 121).

manufacturing facility, "Bayliner" in Lincoln, Alabama. Her duties there had included setting-up spray and foam guns, running test shots to ensure that chemicals were correctly mixed, operating electric lifts, and running electric buffers, saws, pneumatic drills, grinders, and staple guns. She also had repaired molds, prepped molds, boxed parts, and detailed parts.

Consequently, when plaintiff submitted an application for employment at the Benjamin Moore plant site, she inquired of Theresa Rygiel, the facility administrator who accepted her application, what she should indicate in the blank under the heading "Employment Desired." Rygiel instructed her to write "plant personnel."

Plaintiff later was interviewed and ultimately offered a temporary clerical position as assistant to the supervisor of the purchasing and transportation department. The position paid approximately $6.00 an hour, but had no benefits. Plaintiff accepted the offer nevertheless,[3] and began working for Benjamin Moore[4] on September 9, 1996. She worked in that position during

---

[3] Plaintiff testified that she accepted the clerical position only because she hoped to later be transferred to a production position, in which she would receive better pay and benefits.

[4] In actuality, plaintiff was directed to report to "Temp Force," a temporary employment agency located in Pell City, Alabama, for assignment to the Benjamin Moore plant. (Benjamin Moore "utilizes temporary agencies for new workers to ensure that the new workers will properly perform their assigned positions before considering them for full-time positions with the Company."

the remainder of 1996 and throughout calendar year 1997.

Since April of 1997, however, plaintiff attempted on several occasions to transfer to a production position, because of the higher rate of pay and benefits.  On April 11, 1997, for example, she submitted an application for a production position to John Rygiel, Benjamin Moore's plant production manager.  Mr. Rygiel's son Jason, who had no previous experience, was instead hired on a temporary basis.

On April 25, 1997, plaintiff gave her resume to Cynthia Haller, Benjamin Moore's purchasing and transportation supervisor. At Mrs. Haller's suggestion, plaintiff also submitted her resume to Technical Coatings, a subsidiary of Benjamin Moore.  Mrs. Haller's husband, Edward, was a lead person at Technical Coatings, and she asked him to give plaintiff's resume to Tom Zimmer, Technical Coatings' plant manager.

On May 30, 1997, plaintiff met with Henry Placke, Benjamin Moore's plant manager, and asked him whether she would be granted a production position.  Placke told her that the temporary employees already working in production would be granted full-time status before consideration of any new hires.  Placke also told her

---

Benjamin Moore's brief in support of its motion for partial summary judgment (doc. no. 96) ¶ 4, at 2.)

there were no job openings in production, but that a person was needed in the order department.  A few days later, however, on or about June 3, 1997, plaintiff discovered that a male had been hired for a production position.  She was told he was hired as summer help.

Plaintiff filed her first EEOC charge on June 9, 1997, alleging discrimination on the basis of her gender.

Plaintiff continued to seek a production position.  On June 12, 1997, she asked Edward Haller whether any jobs were available at Technical Coatings.  He told her the company needed someone to load trucks, but they would not make any special arrangements for her regarding the hours of work.  (The loading position required persons who could work up to fifteen hours a shift, but plaintiff had to retrieve her child from a daycare facility by 5:30 p.m. each day.)

On August 1, 1997, plaintiff asked Tom Zimmer whether she still was being considered for a production position at Technical Coatings.  He replied the company was under a hiring freeze, and she consequently could be considered only for temporary hire.

On August 12, 1997, Benjamin Moore posted a notice of a position vacancy in the Vehicle Department.  Plaintiff asked John

Rygiel to consider her.  He replied the position most likely would be filled through the temp employment agency, but that the last temporary in the job later had been hired as a full-time employee. (That person was a male.)

On another occasion, plaintiff applied for a job as a second shift resin operator in the production department.  The position ultimately was offered to a male, Dustin Callahan.  Plaintiff was told that Callahan was awarded the position because he was "more enthusiastic."  While plaintiff was waiting to hear the outcome of that job application, however, a production foreman told her that she would not be offered the job, because Benjamin Moore did not hire women in the plant area.

Plaintiff remained at Benjamin Moore on temporary status until January 1, 1998,[5] when George W. Sims, the company's Human Resource Service Representative, offered her a full-time position as an order entry clerk, paying $10.91 per hour, effective January 5, 1998.  Plaintiff accepted the offer, but felt pressured to do so, because Sims told her that Benjamin Moore would terminate all temporary employees who had not been offered full-time positions by January 1, 1998.

Plaintiff filed a second charge of discrimination with the

---

[5] See note 4 *supra*.

EEOC on February 23, 1998, alleging continuing disparate treatment and retaliation by Benjamin Moore for her first charge, and gender discrimination by Technical Coatings.

## II. Discussion

### A.   Motion for partial summary judgment

#### 1.   Standard of review

Federal Rule of Civil Procedure 56(c) provides, in relevant part, that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. *See generally id.*;

7

*Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The movant discharges this burden by "showing" or "pointing out" to the court that there is an absence of evidence to support the non-movant's case. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (*per curiam*). Rule 56 permits the movant to discharge this burden with or without supporting affidavits. *See Celotex Corporation*, 477 U.S. at 324, 106 S.Ct. at 2553.

When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *See Jeffery*, 64 F.3d at 593. The nonmoving party must put forth more than a "mere 'scintilla'" of evidence; instead, "there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

In deciding whether the movant has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor. *See generally Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-movant are not unqualified, however. "Mere general allegations which do not reveal detailed and precise facts will not

prevent the award of summary judgment." *Resolution Trust Corporation v. Dunmar Corporation*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *See Augusta Iron & Steel Works v. Employers Insurance of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

### 2.  Disparate treatment claims

Benjamin Moore contends there are no genuine issues of material fact pertaining to plaintiff's disparate treatment claims. After reviewing the motion, briefs, pleadings, and evidence submitted by the parties, this court disagrees, and finds that summary judgment is not proper.

### B.  Disparate impact claims

Both defendants have moved to strike plaintiff's disparate impact claims.   The theories of "disparate treatment" and "disparate impact" are analytically distinct.   The Supreme Court has explained "disparate treatment" as

> the most easily understood type of discrimination.  The
> employer simply treats some people less favorably than
> others because of their race, color, religion, sex, or
> national origin.   Proof of <u>discriminatory motive</u> is
> critical, although it can in some situations be inferred
> from the mere fact of differences in treatment. ...
> Undoubtedly disparate treatment was the most obvious evil
> Congress had in mind when it enacted Title VII. ...

*International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15, 97 S.Ct. 1843, 1854 n.15, 52 L.Ed.2d 396 (1977) (citations omitted)(emphasis supplied).  The *Teamsters* Court also distinguished disparate treatment from disparate impact claims, explaining that the latter

> involve employment practices that are <u>facially neutral</u> in
> their treatment of different groups but that in fact fall

> more harshly on one group than another and cannot be
> justified by business necessity. ... Proof of
> discriminatory motive, we have held, is not required
> under a disparate-impact theory. ...

*Id.* at 336 n.15, 97 S.Ct at 1855 n.15 (citations omitted) (emphasis supplied).

Defendants contend that plaintiff's disparate impact claims should be stricken, because she failed to plead disparate impact in her complaint. Defendants also contend that plaintiff failed to exhaust her administrative remedies with regard to a disparate impact claim. This court agrees with both contentions.

### 1.   Plaintiff's complaint

Plaintiff did not adequately plead a disparate impact theory in her complaint.[6] The facts alleged only support recovery for disparate treatment. The Eleventh Circuit has recently held that "[a] disparate impact claim requires the identification of a specific, facially-neutral, employment practice causally responsible for an identified statistical disparity." *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1268 (11th Cir. 2000). Plaintiff's complaint does not allege a facially neutral policy that in fact falls more harshly on females. It is not the duty of a district court "to fabricate a claim that a plaintiff has not

---

[6] This court denied plaintiff's motion to amend her complaint by order entered on June 27, 2000 (doc. no. 98, ¶ 3).

spelled out in [her] pleadings." Accordingly, this court finds
that any disparate impact claims are due to be stricken. *Maniccia
v. Brown*, 171 F.3d 1364, 1367 n.1 (11th Cir. 1999) (affirming
district court's summary dismissal of plaintiff's Title VII claims
premised on a sexually hostile work environment, because "[w]hether
she alleged sexual harassment in prior proceedings does not affect
the contes of her complaint") (citing *Case v. State Farm Mutual
Automobile Insurance Company*, 294 F.2d 676, 678 (5th Cir. 1961)).

### 2. Administrative exhaustion

Furthermore, plaintiff has not exhausted administrative
remedies regarding a disparate impact claim. As a general rule, a
Title VII plaintiff cannot state claims in a judicial complaint
that were not included in her EEOC charge.

> This rule serves the dual purpose of affording the EEOC
> and the employer an opportunity to settle the dispute
> through conference, conciliation, and persuasion ... and
> of giving the [employer] some warning of the conduct
> about which the employee is aggrieved.  ... [A]llowing a
> complaint to encompass allegations outside the ambit of
> the predicate EEOC charge would frustrate the EEOC's
> investigatory and conciliatory role, as well as deprive
> the charged party of notice of the charge.

*Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th
Cir. 1994) (citations omitted).

Even so, courts take into account the fact that many EEOC

12

charges are drafted by persons untrained in the slippery nuances of federal law[7] and, accordingly, hold that "a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *Id.* (citing *Taylor v. Western & Southern Life Ins. Co.*, 966 F.2d 1188, 1195 (7th Cir. 1992)). Indeed, it is well established by binding authority that "the scope of the EEOC [charge] should not be strictly interpreted." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970).[8] The former Fifth Circuit instructed district courts that

> procedural technicalities are not to stand in the way of Title VII complainants. Nothing in the Act commands or even condones the application of archaic pleading concepts. On the contrary, the Act was designed to protect the many who are unlettered and unschooled in the nuances of literary draftsmanship. It would falsify the Act's hopes and ambitions to require verbal precision and finesse from those to be protected, for we know that these endowments are often not theirs to employ.

*Id.* The *Sanchez* court emphasized that "the specific words of the charge of discrimination need not presage with literary exactitude the judicial pleadings which may follow." *Id.*

---

[7] It should be observed, however, that the EEOC charges and supporting affidavits set out *infra* do not appear to have been drafted without attorney assistance.

[8] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

The test for determining whether an EEOC charge embraced claims later asserted in a judicial complaint therefore grants a Title VII complainant considerable leeway: "the complaint in the civil action may properly encompass any discrimination like or reasonably related to the allegations [contained in the EEOC] charge and growing out of such allegations" during the pendency of the case before the Commission. *Danner v. Phillips Petroleum Co.*, 447 F.2d 159, 162 (5th Cir. 1971) (citations and internal quotation marks omitted). "In other words, the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Sanchez*, 431 F.2d at 466 (citation omitted). The Eleventh Circuit reiterated this standard in *Griffin v. Carlin*, 755 F.2d 1516 (11th Cir. 1985), saying

> the requirement of exhaustion of administrative remedies
> is satisfied when the issues (a) are expressly raised in
> the pleadings before the administrative agency, (b) might
> reasonably be expected to be considered in a diligent
> investigation of those expressly raised issues, or (c)
> were in fact considered during the investigation.

*Id.* at 1522.

Accordingly, when determining the scope of an EEOC charge, the court must first look to the charge itself. The EEOC received plaintiff's first charge on June 11, 1997, in which plaintiff

14

described the alleged discrimination at Benjamin Moore as follows:

> I have been employed with Benjamin Moore since August 1996 as a clerical assistant on a temporary status. I had applied for a laborer position in production because I had worked in a similar job for the previous 5 (five) years, but was hired as a clerical assistant for which I had to be trained. I have been repeatedly passed over for promotions and for a full-time position in favor of male employees with less experience. Therefore, I am making less money than I would in one of the positions that I have applied for and less money than male full-time employees. Benjamin Moore does not have a woman's restroom in production.
>
> I am subjected to sexual harassment and made to feel that I could get a promotion or full-time status if I dressed in a revealing manner.
>
> I believe that I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended because of my sex, female, and that I have been subjected to a [sic] sexual harassment and a sexually hostile work environment that male employees are not subjected to.[9]

Plaintiff also attached the following affidavit to her charge:

> I have been employed with Benjamin Moore since August 1996 on a temporary status. I was hired through a temporary agency as a clerical assistant to Cynthia Haller, the transportation and purchasing supervisor, even though I had applied for a laborer position in production. I had to be trained in clerical and secretarial tasks, but would not have needed training for the laborer position in production because I had worked a similar job for five years. Ms. Haller and I are the only women in the production area of Benjamin Moore, but no women work in production as a laborer. Benjamin Moore does not provide a women's bathroom in the production area.

---

[9] Complaint (doc. no. 1), Exhibit 1.

I resubmitted my application for a laborer position, but have been passed over in favor of male applicants with less experience.  I know of males who have been hired to fill vacant positions for which I was equally or more qualified to handle.  Male employees, who were hired through the same temporary agency, have been placed in permanent positions and are making more money than me. I am still on a temporary status which does not entitle me to any benefits.

I have submitted my application to a Benjamin Moore affiliate because I heard there was [sic] vacancies in production.  I have not been considered for those jobs either.

I believe that I have not been hired full-time or placed in production because I am a woman.

After a temporary co-worker in the office area named Debbie was recently hired on a permanent basis as a receptionist, male employees have repeatedly suggested to me that I need to buy a mini-skirt because that is what it takes to get a permanent job at Benjamin Moore.  Most recently, when I went on break, one of the male supervisors handed me a pocket-knife and told me to cut my jeans to make them "short-shorts" as this was necessary to be hired on a permanent basis.  I have spoken with other female employees in the office area who have experienced similar harassment.

My constant humiliation and sexual harassment has greatly lessened my self-esteem and confidence.  I feel that I have been discriminated against due to my gender, female, and have been subjected to sexual harassment.[10]

Plaintiff submitted a second charge on February 16, 1998, which was received by the EEOC on February 23, 1998.  It contained the following allegations:

---

[10] Id.

16

> I have been retaliated against by management at Benjamin
> Moore and additionally, by management at Techincal
> Coatings, an affiliate of Benjamin Moore. I have applied
> for positions at Benjamin Moore and Technical Coatings
> and have been denied these positions, passed over and the
> positions have been given [sic] male employees with less
> experience than me. I have been told that I would not be
> hired for positions because I was a woman and that
> Benjamin Moore did not hire women in the plant area. I
> was also told that I did not understand because I was a
> woman and [,] therefore, of the weaker sex. I have been
> denied positions with Technical Coatings based on the
> explanation that it would be difficult to work around my
> child's daycare situation. It is my understanding that
> male employees are not asked about their daycare
> situation or if they even have a family. I feel that I
> am being discriminated [sic] by Benjamin Moore and
> Technical Coatings on the basis of my gender and in
> retaliation for filing a previous charge of
> discrimination against Benjamin Moore.[11]

Plaintiff also submitted the following affidavit with the foregoing

charge:

> Since filing my original charge of discrimination against
> Benjamin Moore on June 11, 1997, several events have
> occurred that require a supplement to that charge. ...
>
> ... I have remained on a temporary status since my hire
> date in August 1996 until January 1, 1998, when I was
> hired full time as an order entry clerk. I currently
> perform job duties in my old job as well as my new job.
> I was removed from my office and moved to a cubicle.
> Benjamin Moore has brought in many male employees in
> production on a full-time status. Bonuses are only given
> to production employees and not office employees.
>
> Recently I applied for Resin Operator for which I am
> qualified. The only other applicants were two male
> employees in shipping. One man dropped out of the

---

[11] Id., Exhibit 2.

17

process, so the job was between another male and me. While waiting for the outcome of my application, a foreman in production came to me and told me that Benjamin Moore does not hire women in the plant area. Shortly after that, I was told that the male applicant obtained the job of Resin Operator.   I believe that Benjamin Moore continues to discriminate against me because of my gender and is retaliating against me for trying to protect my rights.  There are 40 plus employees in production and all are men.   There is not even a bathroom for women in the production area.

On another occasion, I was taking a break and several men were also present taking their break.  One of the foremen, told me that the reason why I did not understand what they were talking about was because I was a woman and that is the weaker sex.

I have attempted on two occasions to obtain employment at a Benjamin Moore affiliate, Technical Coatings.  I am adding Technical Coatings as a defendant because it also discriminated against me because of my gender.   I was qualified for the open positions at Technical Coatings. On my first application at Technical Coatings, it was explained to me by a management person at Benjamin Moore that I did not get the job because it would be a problem working around my child's day care situation.  An employee at Technical Coatings came to me after I had applied a second time and told me that I should get a lawyer because of how I was passed over at Technical Coatings because of my gender.   Technical Coatings hired two males instead of me.

Benjamin Moore, Technical Coatings, and their management teams have made me feel inferior and have caused my self esteem to fall.  I am qualified for all of the positions that I have applied for, but have not been given any consideration because I am female.   I am embarrassed and humiliated every day.  Since my original charge was filed against Benjamin Moore, my job conditions have become worse.  I have been moved from my office and placed in a cubicle.  I have no other recourse but to file a charge of discrimination against Benjamin

Moore and Technical Coatings for their discriminatory treatment of me due to my gender and retaliation.[12]

Plaintiff's first charge and accompanying affidavit describe facts that could only support a claim of disparate treatment. She argues that Benjamin Moore failed to assign her to a job in production because of her gender. She also alleges that she has been subjected to sexual harassment. Neither the charge nor its accompanying affidavit identify a facially neutral policy that falls more harshly on females. Plaintiff's second charge and accompanying affidavit similarly fail to identify a policy. Plaintiff does allege that she was told, "Benjamin Moore does not hire women in the plant area."[13] Even if true, such a policy is far from facially neutral; it is facially discriminatory. It is possible that such facts could support an allegation of a pattern and/or practice of disparate treatment, but they are not like or related to facts that would support an allegation of disparate impact. Because neither of plaintiff's EEOC charges and accompanying documents allege facts that could conceivably put the EEOC or the employer on notice of a disparate impact claim, this court finds that plaintiff has failed to exhaust administrative remedies regarding such a claim.

---

[12] Id.

[13] Id.

## C.    Retaliation Claims

On August 15, 2000, plaintiff filed a motion for leave to amend her complaint, seeking permission of this court "to dismiss her claim of retaliation and claims for relief in the form of compensatory and punitive damages." (Doc. No. 119 ¶ 1.)  This court granted the motion by means of an Order handwritten on the face of the motion, stating simply "Granted and So Ordered August 18, 2000." (Doc. No. 121.)  The rub lies in the fact that neither the underlying motion nor this court's handwritten order specified whether such claims were dismissed with or without prejudice. Defendants now ask this court to, in effect, modify the prior order and dismiss the claims with prejudice (doc. no. 126).

Rule 41(a)(2) provides for voluntary dismissal by order of court.  It reads:

> Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court.  <u>Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice</u>.

Defendants argue they will be prejudiced, because "Plaintiff could later change her mind on these issues or Plaintiff's counsel could

20

claim to have reconsidered the viability of these claims and re-assert them against Defendants."[14]   However, the court directs defendants to Rule 15, which provides that any amendments to the pleadings at this stage may only be made with leave of the court. Such prejudice, if any, can be addressed at that time. Defendants' motion accordingly will be denied.

## D.   Certification or Dismissal of Class Claims

Plaintiff asks the court to certify a class (doc. no. 103), while defendants seek dismissal of such claims (doc. nos. 105, 125).   "[A] Title VII class action, like any other class action, may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982).   Whether an action should be certified as a class action is a procedural question, distinct from the merits of the action. *Garcia v. Gloor*, 618 F.2d 264 (5th Cir. 1980).[15]   "An allegation that [gender] discrimination has occurred neither determines whether a class action may be maintained in accordance with Rule 23 nor defines the

---

[14] Defendants' Motion to Dismiss with Prejudice (doc. no. 126) ¶ 6.

[15] In Bonner v. City of Prichard, Alabama, 661 F.2d 1206(11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit.

class." *Falcon*, 457 U.S. at 157, 102 S.Ct. at 2370. The Supreme

Court elaborated upon the distinction in *Falcon*, saying:

> Conceptually, there is a wide gap between (a) an
> individual's claim that he has been denied a promotion on
> discriminatory grounds, and his otherwise unsupported
> allegation that the company has a policy of
> discrimination, and (b) the existence of a class of
> persons who have suffered the same injury as that
> individual, such that the individual's claim and the
> class claims will share common questions of law or fact
> and that the individual's claim will be typical of the
> class claims. For respondent to bridge that gap, he must
> prove much more than the validity of his own claim.

*Id.*

Rule 23(a) states four threshold requirements applicable to

all class actions: (1) *numerosity* ("the class is so numerous that

joinder of all members is impracticable"); (2) *commonality* ("there

are questions of law or fact common to the class"); (3) *typicality*

(the named parties' claims or defenses "are typical ... of the

class"); and (4) *adequacy of representation* ("the representative

parties will fairly and adequately protect the interests of the

class").

> One or more members of a class may sue or be sued as
> representative parties on behalf of all only if (1) the
> class is so numerous that joinder of all members is
> impracticable, (2) there are questions of law or fact
> common to the class, (3) the claims or defenses of the
> representative parties are typical of the claims or
> defenses of the class, and (4) the representative parties
> will fairly and adequately protect the interests of the

class.

Fed. R. Civ. P. 23(a).  The burden of proving these prerequisites is on the party seeking class certification.  *Falcon*, 457 U.S. at 161, 102 S.Ct. at 2372; *see also, e.g., Gilchrist v. Bolger*, 733 F.2d 1551, 1556 (11th Cir. 1984); *Nelson v. United States Steel Corp.*, 709 F.2d 675, 678-79 (11th Cir. 1983).

In addition to satisfying all prerequisites of Rule 23(a), parties seeking class certification must show that the action is maintainable under at least one of the three categories of Rule 23(b).   Here,  plaintiffs  seek  certification  under  Rules 23(b)(1)(A), (b)(2), and (b)(3).

> Furthermore, this action should be maintained as a class action because:  (a) the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual class members and would establish incompatible standards of conduct for the party opposing the class [*see* Fed. R. Civ. P. 23(b)(1)(A)]; and (b) Benjamin Moore Inc.'s Pell City Plant, the party opposing the class, has acted and refused to act on grounds generally applicable to the class [*see* Fed. R. Civ. P. 23(b)(2)].

> Plaintiff further submits that this case should be maintained as a class action pursuant to Rule 23(b)(3) because questions of law and fact common to members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient

adjudications [sic] of this controversy.[16]
In this case, however, there is no need to go beyond the basic requirements of Rule 23(a).

Plaintiff maintains that she has satisfied the requirements of Rule 23(a).  She contends that she satisfies the numerosity requirement, estimating the membership of the class could approach 500 persons.[17]  Plaintiff purports to satisfy the commonality requirement by alleging that defendant has engaged in a regular and systematic practice of discriminating against females.[18]  She also contends that she satisfies the typicality prong, alleging the common injury of unlawful and unjust employment practices.[19]  Plaintiff further maintains that she will fairly and adequately protect the interests of the members of the class, that she has no conflict of interest with other members of the putative class, and that her counsel is  competent to prosecute employment law class actions.[20]

Plaintiff's complaint envisions a class comprised of all those female individuals who:

    (a)  are currently full time or part-time employees of
    defendant in the last five (5) years, or those potential

---

[16] *See* plaintiff's motion for class certification (doc. no. 103), at 2.
[17] Complaint ¶ 32 (doc. no. 1).
[18] Id. ¶ 33.
[19] Id. ¶ 34.
[20] Id. ¶ 35.

female individuals wrongfully denied a full-time or part-time position at Benjamin Moore for which they interviewed and a male was awarded the position[;] ...

(b) [those] who, in the last five (5) years, have interviewed or applied for a position in production and a less qualified or experienced male was awarded the position; and

(c) those female employees, full or part-time, whom Benjamin Moore has wrongfully failed and refused to pay the same salary as males similarly situated.[21]

Plaintiff also proposes to include female individuals who:

(d) are future and deterred female job applicants, which of necessity cannot be identified.[22]

Assuming numerosity, plaintiff must meet the other three requirements of Rule 23(a). "The requirements of commonality, typicality and adequacy of representation tend to merge. Commonality and typicality represent the 'nexus' necessary between class representatives and class members." *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 n.8 (11th Cir. 1992) (internal citations omitted).

Here, plaintiff has failed to demonstrate a sufficient factual nexus binding her disparate treatment claim[23] to the claims of the

---

[21] Id. ¶ 31. Plaintiff has since withdrawn her claims brought according to the Equal Pay Act.

[22] Added by Plaintiff's Amended Complaint (doc. no. 16) ¶ 31.

[23] Plaintiff's Equal Pay Act claim was dismissed at her request by the court's order of June 27, 2000 (doc. no. 98). That same order denied Plaintiff's motion to amend her complaint by adding disparate impact. Plaintiff's retaliation claim was withdrawn at her request by the court's order of August 18, 2000 (doc. no. 121).

members of the putative class.  The facts out of which plaintiff's claim arises are peculiar to her claim of disparate treatment. Plaintiff is an incumbent employee, which differentiates her from unsuccessful applicants and applicants who were allegedly deterred from applying.  She has merely asserted "a general policy of [gender] discrimination alleged to unite otherwise factually dissimilar disparate treatment claims."  *Id.* at 1569 n.10 (quoting *Nelson v. United States Steel Corp.*, 709 F.2d 675, 679 n.9 (11th Cir. 1983)).  Thus, the court finds plaintiff's motion for class certification is due to be denied.  *See also, Rutstein v. Avis Rent-A-Car Systems, Inc.*, 211 F.3d 1228 (11th Cir. 2000).

### III. Conclusion

In accordance with the foregoing, defendants' motion for partial summary judgment is due to be denied, plaintiff's disparate impact claims are due to be stricken, defendants' motion to dismiss with prejudice plaintiff's retaliation claims is due to be denied, and plaintiff's class action claims are due to be dismissed. Orders consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this the ___8th___ day of December, 2000.

_____

United States District Judge

26